(68 App. Div. 88.)

### MARLIN FIREARMS CO. v. SHIELDS.

(Supreme Court, Appellate Division, First Department. January 17, 1902.)

INJUNCTION—RESTRAINING PUBLICATION OF LIBEL—IRREPARABLE INJURY TO PROPERTY.

A complaint alleging that defendant, for the purpose of coercing plaintiff into advertising in its publication, was making a practice of publishing false and fictitious letters purporting to come from sportsmen, specifying certain defects, which do not in fact exist, in a firearm manufactured by plaintiff, states a cause of action, entitling plaintiff to an injunction restraining further publications of the same nature; it being impracticable to ascertain the amount of plaintiff's damage, and the injury therefore irreparable, in an action at law.

McLaughlin, J., dissenting.

Appeal from special term, New York county.

Action by the Marlin Firearms Company against George O. Shields. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Charles Gibson Bennett, for appellant.
John S. Wise, for respondent.

HATCH, J. The complaint in this action is voluminous beyond necessity. It attempts to aver, and as we think succeeds in so doing, a cause of action for equitable relief. Briefly stated, the complaint avers that the plaintiff is a foreign corporation, having its place of business at New Haven, Conn., by virtue of the laws of which state it was incorporated; that its business is the manufacture and sale of firearms, and, in particular, a rifle called and known as the "Marlin Repeating Rifle"; that such rifle is well known throughout the United States, and in many foreign states and countries, and is well known to the trade and to sportsmen in all parts of the country as a model rifle; that the defendant is engaged in the publication, in the city of New York, of a monthly magazine called "Recreation," of which magazine he is also the editor and manager. The complaint further avers, in many separate paragraphs, that the plaintiff was an advertiser in such magazine, specifying the space which it occupied with its advertisement, and the prices paid therefor; that the defendant raised the price for the publication of such advertisement to an exorbitant sum, which the plaintiff was unwilling to pay, and thereupon it withdrew such advertisement from the columns of the magazine; that after such withdrawal the defendant, for the purpose of coercing the plaintiff into

advertising in the magazine, wrote, published, and sent to the plaintiff what the complaint designates as "fake" letters, purporting to have been written by sportsmen in different parts of the country, derogatory of the plaintiff's rifle, and falsely charging therein certain specified defects which in fact did not exist, and which were written and published by the defendant in pursuance of a wrongful, malicious, and illegal scheme, designed·to extort money, and force the plaintiff to advertise in the columns of defendant's magazine at the extortionate prices charged by the defendant therefor. The complaint, at considerable length, sets out in detail the scheme or plan of the defendant, accompanied by the letters which he wrote pursuant to said scheme. The complaint further avers that such letters and the publication thereof had greatly injured the plaintiff in its business of manufacturing and selling such rifles, and caused it to lose sales of the same to a large extent, but to what extent the plaintiff is unable to state; that the defendant intends to pursue such scheme, and force the plaintiff, by means thereof, to advertise in the columns of such magazine, and pursuant thereto, from time to time, intends to continue to publish such "fake" letters, containing false and unfounded statements calculated to deceive the public, and to depreciate the accuracy, effectiveness, the general merits, and value of the said rifle; and that the plaintiff has no adequate remedy at law for such wrong, and does and will suffer irreparable damage therefrom. In the prayer for relief judgment is asked perpetually enjoining and restraining the defendant from publishing, or causing or permitting to be published, in such magazine or elsewhere, any article or statement, in any form, falsely attacking, depreciating, or misrepresenting the plaintiff's said rifle, and for other relief. The defendant demurred to the complaint upon the ground that the court had no jurisdiction of the subject of the action, and that the complaint did not state facts sufficient to constitute a cause of action. The court at special term sustained the demurrer, and judgment was entered thereon dismissing the complaint, and an appeal therefrom brings the matter into this court.

It is conceded by the plaintiff, and is well-settled law, that a court of equity, exercising powers solely according to the recognized jurisdiction of the high court of chancery, has no authority to entertain an action which seeks to restrain the publication of a libel. Such authority has been uniformly denied. Brandreth v. Lance, 8 Paige, 23, 34 Am. Dec. 368. In England such subject has been regulated by statute, and by express enactment the court of chancery has been given jurisdiction to restrain by injunction the continued publication of libelous statements, and particularly those affecting the business and property of another. The statute itself is only important as showing the general trend of public opinion, which conceives the idea that relief by way of injunction ought to be granted against continued libelous publications which tend seriously to injure a person in his property or business, and this mainly for the reason that the ordinary remedy by an action for damages, or, in a proper case, by criminal prosecution, is inadequate to protect a person from serious injury and loss. The diffi-

culty of the situation is plainly apparent. Under the theory of our government, the right of every citizen to freely speak, write, and publish his sentiments on all subjects is a part of the fundamental basis upon which the freedom of the citizen rests, and such privilege has always been embraced in the organic law of this state, the citizen being only liable, and then in a civil action for damages, for an abuse of the right secured to him. Const. art. 1, § 8.

While this is true, yet the courts have always sought to restrain a wrongful act so far as possible, and still leave intact the right of free publication and speech, where a civil action for damages inflicted by the wrongful act would result in insufficient relief. Where the injury is purely personal, like an attack upon character and reputation, equity, as administered according to the high court of chancery, from which our system and authority is taken, has uniformly declined to entertain jurisdiction, for the reasons expressed in the authority which we have cited; but it was recognized in that case that the court of chancery possessed power to restrain a publication by injunction when necessary to protect the rights of property, and the exercise of such jurisdiction has been sanctioned by a learned writer on equity jurisprudence. 2 Story, Eq. Jur. § 948. Effect has been given to such principle by courts in other states. Vegelahn v. Guntner, 167 Mass. 92, 44 N. E. 1077, 35 L. R. A. 722, 57 Am. St. Rep. 443; Beck v. Protective Union, 118 Mich. 497, 77 N. W. 13, 42 L. R. A. 407, 74 Am. St. Rep. 421. It is therefore clear that, where the facts of the case bring it within the principle, equity may lay hold of the matter, and restrain the publication by injunction, even though such publication embodies a libel upon the person, and all that seems to be necessary to be shown to authorize its interference is that the intended publication will work the destruction of property or inflict irreparable injury thereto. The federal courts have applied the principle and sustained it in cases quite similar to the present. Emack v. Kane (C. C.) 34 Fed. 46; Casey v. Typographical Union No. 3 (C. C.) 45 Fed. 135, 12 L. R. A. 193.

The question, therefore, which confronts us is, do the averments of this complaint bring the case within this principle of law? In effect, what the defendant has done and intends to do is to write letters derogatory to the character of the plaintiff's firearm, specifying particular inherent defects therein, which clearly tend to discredit it in the minds of the public, and, in particular, of persons having occasion to use it, and thereby prevent its sale. Such writing, while composed by the defendant, is represented and published as emanating from a person or persons making particular use of the firearm in question. That such publication tends to destroy the sale of the firearm in question is clearly apparent; that the extent to which its sale would be reduced by such acts is clearly impossible of actual proof. An action at law, therefore, would fall short of measuring in damages the plaintiff's injuries, and in this view it is irreparable. The case presents, therefore, an injury to the property and business of the plaintiff of such a character as renders it quite impracticable to measure the injury in money damages. These acts are done and the injury inflicted solely for the purpose,

as appears by the averments of the complaint, of coercing the plaintiff into advertising in the publication of the defendant, and paying therefor an extortionate sum. It would seem that, under such circumstances, the plaintiff ought not to be turned away empty handed. It seems to us that the language of Judge Blodgett in Emack v. Kane, supra, has precise application:

"I cannot believe that a man is remediless against persistent and continued attacks upon his business. * * * It shocks my sense of justice to say that a court of equity cannot restrain systematic and methodical outrages like this by one man upon another's property rights. If a court of equity cannot restrain an attack like this upon a man's business, then the party is certainly remediless, because an action at law, in most cases, would do no good, and ruin would be accomplished before an adjudication would be reached. True, if may be said that the injured party has a remedy at law; but that might imply a multiplicity of suits, which equity often interposes to relieve from. But the still more cogent reason seems to be that a court of equity can, by its writ of injunction, restrain a wrongdoer, and thus prevent injuries which could not be fully redressed by a verdict and judgment for damages at law. Redress for a mere personal slander or libel may perhaps properly be left to the courts of law, but no falsehood, however gross and malicious, can wholly destroy a man's reputation with those who know him; but statements and charges intended to frighten away a man's customers, and intimidate them from dealing with him, may wholly break up and ruin him financially, with no adequate remedy, if a court of equity cannot afford protection by its restraining writ."

This language is equally applicable to a case where the effect of a false publication is to induce persons to refrain from purchasing an article manufactured by the plaintiff, and upon the sale of which the success of the business necessarily depends. It matters not what the false means are by which the result is accomplished, if the result be to inflict upon the plaintiff an irreparable loss in his rights of property. Financial ruin may be accomplished by these means as easily as by intimidation, force, or fraud, and the courts have not been slow in granting relief under such circumstances. Beck v. Protective Union, 118 Mich. 497, 77 N. W. 13, 42 L. R. A. 407, 74 Am. St. Rep. 421, and cases cited and reviewed thereon. We think that in principle this case is brought within the recognized equitable powers, and that to some extent, at least, the plaintiff is entitled to relief. It is not easy to frame in precise language the extent to which equity may interfere and restrain this publication, but we are clear that the defendant may be restrained from planning and endeavoring to injure and ruin the business of the plaintiff by maliciously publishing untrue statements contained in letters written by himself, but falsely purporting to be written by some person using the rifle manufactured and sold by the plaintiff. To this extent the defendant may be enjoined. It follows, therefore, that the judgment should be reversed, and the demurrer overruled, with leave to the defendant to answer within 20 days, upon payment of the costs upon this appeal and in the court below.

Judgment reversed, with costs, and demurrer overruled, with no costs, with leave to defendant to withdraw demurrer and answer in 20 days, on payment of costs in this court and in the court below. All concur, except McLAUGHLIN, J., who dissents.